# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| L ALD LLC, a Florida Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> REBEKAH M. GRAY, an individual; MERLIN PUBLISHING LLC, a Texas Limited Liability Company d/b/a MERLIN'S PEN PUBLISHING; GATEKEEPER PRESS, a Florida Limited Liability Company; INGRAM INDUSTRIES INC., a Tennessee corporation d/b/a INGRAM CONTENT GROUP and/or LIGHTNING SOURCE; HATCHETTE BOOK GROUP, a New York corporation; and DOES 1-50, inclusive, <br><br> Defendants. | Case No.: 24-CV-02195-GPC-MSB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> **[ECF No. 33]** |

Before the Court is a 12(b)(6) motion to dismiss by Defendants Rebekah M. Gray, Hachette Book Group, and Merlin Publishing LLC, d/b/a Merlin's Pen Publishing (collectively, "Defendants"). ECF No. 33 ("Mot." or "Motion").

Based upon a review of the briefs, the supporting documentation, the applicable law, and for the foregoing reasons, the Court hereby DENIES IN PART and GRANTS IN PART Defendants' motion to dismiss.

## FACTUAL BACKGROUND

This is a copyright infringement controversy involving several works of young adult ("YA") fantasy fiction.

Under the pseudonym "Liz Ald," sisters Lesley and Lindsey Aldrich write YA novels. FAC ¶ 29. They have authored a three-novel series, the first two of which are at issue here: *The Boy with the Beautiful Name* and *The Boy with the Beautiful Soul* ("Book 1" and "Book 2," respectively; "the Works," collectively). *Id.* ¶¶ 30, 37. Together, they own the Plaintiff L ALD LLC. *Id.* ¶ 15.

According to Plaintiff, a portion of Book 1 was first posted on the website Wattpad in January 2022. *Id.* ¶ 64. Wattpad is a "leading web-novel platform," where authors can publish their content; it has over 650 million authored works on its site. *Id.* ¶¶ 39, 41. Plaintiff posted multiple chapters of Book 1 each month on Wattpad, with the entire book posted to the website by July 2022. *Id.* ¶ 64. A portion of Book 2 was first posted to Wattpad in August 2022, and the entire book was posted on Wattpad by March 2023. *Id.*

Plaintiff alleges that Book 1 "enjoyed immediate commercial success and notoriety" on Wattpad, that it was ranked #1 in the Fiction category for at least 12 weeks, and ultimately gathered more than 630,000 views. *Id.* ¶ 2-3. Plaintiff also alleges that Book 2 "was met with similar commercial success and notoriety, reaching over 175,000 views upon initial completion." *Id.* ¶ 4.

On February 5, 2024, Lesley Aldrich obtained registered copyrights for both books and then transferred the interests in these copyrights to Plaintiff. *Id.* ¶¶ 31-36.

Defendant Rebekah Gray is an author who writes YA fiction under the pen name RM Gray. *Id.* ¶ 16. On July 10, 2023, Defendant Gray registered the copyright in *Nightweaver* as an unpublished literary work completed in 2022. *See* ECF No. 3-11 at 7; RJN at 2 (Item No. 1). Gray published *Nightweaver* in October 2023. *See* ECF No. 9-2 at 1; RJN at 2 (Item No. 4).

At some point in time, Plaintiff concluded that there were similarities between Plaintiff's Works and *Nightweaver*, and on March 20, 2024, Plaintiff sent a cease-and-desist letter to Defendant Gray and Gatekeeper Press, LLC, asserting copyright infringement. FAC ¶ 133. Gray's counsel responded to the letter, stating that *Nightweaver* was written before any publication or authoring of Liz Ald's "Beautiful Boy" series, so Defendant Gray could not have copied any element of it. *Id.* As supporting evidence, Defendant Gray's counsel sent Plaintiff copies of email exchanges between Gray and her editor in June 2022 in which Gray allegedly provided the complete manuscript. *Id.* ¶ 135.

Gray's counsel also sent a Word document that was purportedly the manuscript for *Nightweaver*. Plaintiff alleges that it discovered "peculiarities" from the properties of the manuscript, namely that "the 100,000-word document showed that in its lifetime that the document had only two (2) revisions and a total editing time of two (2) minutes." *Id.* ¶ 137. Plaintiff also alleges that the document contained a Create Date of June 12, 2022, which pre-dated the complete publication of Book 1 by a few weeks. *Id.* ¶ 6. From this, Plaintiff alleges that Defendant Gray had manipulated the Word document manuscript to make it seem like its creation pre-dated Plaintiff's Works. *Id.* ¶ 138.

Defendant Gray provided an expert declaration with purported authentic files from Gray's computer, but Plaintiff alleges that these files are not the same as the actual email

attachments. *Id.* ¶ 146-47. According to Plaintiff, Defendant Gray has refused to provide the native files for Plaintiff's review because this would show the Court that the documents previously provided to the Court were "fabricated." *Id.* ¶ 149-50.

## PROCEDURAL HISTORY

On November 25, 2024, Plaintiff moved for preliminary injunction to enjoin Defendants "from offering for sale on any medium the novel titled *Nightweaver* by RM Gray." ECF No. 3. The Court denied the motion for preliminary injunction on January 28, 2025. ECF No. 19 ("Order Denying Prelim. Inj.").

Defendants filed a motion to dismiss the complaint, ECF No. 22, and then Plaintiff filed an amended complaint on March 10, 2025, ECF No. 28.

Defendants filed a motion to dismiss the amended complaint. ECF No. 33 ("Motion" or "Mot."). Plaintiff filed an opposition ("Opposition" or "Opp.") and Defendants filed a reply ("Reply"), ECF Nos. 35, 36.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and whether it has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains factual matter that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Generally, on a motion to dismiss, courts will limit their review to the contents of the complaint and may only consider extrinsic evidence that is properly presented as part of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts can also incorporate by reference certain documents that are not found within, or attached to, the plaintiff's pleading. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Defendants request the Court to either take judicial notice or consider, based on incorporation by reference, several items. ECF No. 33-2 ("Request for Judicial Notice" or "RJN"). The items are as follows: (1) the copyright registration certificate for *Nightweaver* (registration number TXu 2-382-354); (2) *The Boy with the Beautiful Name* and *The Boy with the Beautiful Soul*, which were previously lodged with the Court on an Amazon Kindle eBook reader on December 13, 2024, *see* Notice of Lodging, ECF No. 10; (3) *Nightweaver*, which was previously lodged with the Court on February 14, 2025, using a print copy of the standard edition of *Nightweaver* as published by Hachette Book Group, *see* Notice of Lodging, ECF No. 23; (4) the October 2023 publication date of *Nightweaver*, as acknowledged in Plaintiff's March 20, 2024 cease-and-desist letter that is incorporated by reference in Paragraph 57 of Plaintiff's Complaint; and (5) the

"Wattpad" website, including the "Read count FAQ" article available through the Wattpad Help Center.  RJN at 2-3.

The Court judicially notices Item No. 1, which is the copyright registration certificate.  It and its contents are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot be questioned."  Fed. R. Evid. 201(b).  While not disputing the contents of the copyright registration certificate, Plaintiff argues that "the copyright registration… presumably only relate[s] to the original version of *Nightweaver*" (i.e., the October 2023 Gatekeeper edition).  ECF No. 35-1 (Opposition to Request for Judicial Notice).  Regardless of whether this is true, Plaintiff's cease-and-desist letter identified the Gatekeeper 2023 edition as being the allegedly infringing work.  *See* ECF No. 9-2.  And the FAC, which incorporates and references the cease-and-desist letter, also appears to base the alleged similarities on that edition.  The copyright registration certificate is clearly relevant and undisputed in its accuracy and authenticity, and the Court takes judicial notice of it.  For these same reasons, the Court also considers the October 2023 publication date (Item No. 4) as incorporated by reference.

As to Item No. 3 (the Hatchette version of *Nightweaver*), Plaintiff argues that this version may differ from the "original version" because Hatchette's editorial team spent "upwards of 200 hours of labor" working on *Nightweaver*, ECF No. 9-3 (Hightower Decl.) ¶ 27, and that Defendants have not explained how they could differ, ECF No. 35-1 at 2.  However, as Defendants point out, Plaintiff has alleged that the Hachette edition is an ongoing infringement.  *See* FAC ¶ 153 ("defendants to this suit are publishers of Defendant Gray's infringing work, with Hachette being the most recent publisher").  Because of this, the Court finds that the Hachette version is incorporated by reference in the complaint.

As to Item No. 5, the Court considers it as incorporated by reference because Plaintiff extensively relies on the Wattpad website for its claims about the "views" or "reads" of Plaintiff's Works.  *See, e.g.,* FAC ¶¶ 2-3, 46-60; *see Knievel*, 393 F.3d at 1076 (incorporating by reference "surrounding web pages" that provided the context in which allegedly defamatory photograph was shown).

Finally, the Court also considers as incorporated by reference Item No. 2, which are the copies of the Plaintiff's Works in eBook form, because these lie at the heart of Plaintiff's claims, and there is no dispute as to the accuracy and authenticity of these copies.

## DISCUSSION

### I. DIRECT COPYRIGHT INFRINGEMENT

To sustain a copyright claim, Plaintiff must allege (1) "ownership of a valid copyright" and (2) "copying of constituent elements of the work that are original." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018).  There is no dispute on the first prong.  Instead, this claim centers on the second prong, and Plaintiff must plausibly allege both "unlawful appropriation" and "copying." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

#### A. Unlawful appropriation

To allege unlawful appropriation, Plaintiff must plead facts showing that the works share substantial similarities.  *Id.* at 1064.  "[W]hether works are substantially similar involves a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.'  The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018).  Under the "extrinsic test," the court first filters out "the unprotectable elements of the plaintiff's work – primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly

associated with the treatment of a given subject).” *Id.*  The remaining protectable elements are then compared "to corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.* "For literary works, '[t]he extrinsic test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works.'" *Masterson v. Walt Disney Co.*, 821 F. App'x 779, 782 (9th Cir. 2020) (quotation omitted).

"Only the extrinsic test's application may be decided by the court as a matter of law…" *Rentmeester*, 883 F.3d at 1118. (citation omitted).  Dismissal may be disfavored at this stage, if additional evidence would "help inform the question of substantial similarity." *Alfred v. Walt Disney Co.*, 821 Fed. App'x 727, 719 (9th Cir. 2020).  But "determining substantial similarity does not necessarily require expert testimony." *Masterson*, 821 Fed. App'x at 781.  Instead, the court is required to do what it always must do when faced with a 12(b)(6) motion to dismiss: determine whether the complaint states a plausible claim.  Although ruling as a matter of law at the pleading stage can sometimes be appropriate, the Ninth Circuit has "long held that summary judgment is not highly favored on questions of substantial similarity." *Zindel as Tr. For David Zindel Tr. V. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020) (cleaned up and citation omitted).  "Courts must be just as cautious before dismissing a case for lack of substantial similarity on a motion to dismiss." *Id.*  Dismissal is only warranted if, as a matter of law, the similarities between the two works are only unprotectable material or are de minimis, such that reasonable minds could not differ on the issue of substantial similarity.  *See id.* (*citing L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 848 (9th Cir. 2012), *abrogated on other grounds as recognized by Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194 (9th Cir. 2020)).  If additional evidence uncovered in discovery "could shed light on any issues that actually matter to the

outcome," then dismissal at the pleading stage is inappropriate. *See Rentmeester*, 883 F.3d at 1123.

  <u>Substantially similar elements</u>. Plaintiff here alleges 42 "plot similarities"[1], 58 similar character traits[2], and 99 scene similarities.[3] Plaintiff's FAC does not provide any alleged similarities that were not already alleged in the original complaint or in the motion for preliminary injunction. The FAC highlights some specific plotlines and scenes, but there are no new alleged similarities. Previously, the Court found that these supposed similarities were unconvincing. Order Denying Prelim. Inj. at 17. However, the Court now faces a motion to dismiss, and the "standard on a motion to dismiss is quite different from the standard for granting a preliminary injunction." *American Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1193 (D.N.M. 2010) (citation omitted).

  Here, Plaintiff has provided enough evidence of similarities that go beyond a *de minimis* level, such that reasonable minds could differ on whether there is substantial similarity between Plaintiff's Works and *Nightweaver*. Plaintiff provides several charts to show character, plot, and scene similarities. To be sure, there are some similarities that derive from generic and common tropes of fantasy and romance genres, which are too "general" to be protectable ideas. *Masterson*, 821 F. App'x at 782. These include the detail that the heroine is smart and sassy with dark brown hair, or that the heroine visits a garden with the lead male love interest. FAC at 38, 30. And as the Court noted previously, there are purported "similarities" that are simply common phrases, verbs,

---

[1] All are from Book 2, FAC ¶ 118.

[2] Thirty-four are from Book 2, FAC Ex. 4.

[3] Ninety-three are from Book 2, FAC Ex. 5.

adjectives, and idioms. *See, e.g.,* ECF No. 28-5, Ex. 5 (#53: "Sara bit her lip" compared with "I bite my lip."). This is not protectable.

But not all of the listed similarities are obviously scenes-a-faire or non-protectable. For example, according to Plaintiff, both works feature an antagonist who has a tattoo on his arm that identifies him with a rebel group of pirates causing fear and mayhem; the lead female sees the tattoo early in the story but doesn't know the true identity of the antagonist until the end of the book, where – in a major plot twist – he reveals his identity. FAC at 24. There are also surprising scene similarities that Plaintiff highlights in the complaint, such as a garden picnic with apple pie made from a cookbook owned by someone other than the protagonist and the male character mentions that he dislikes flowers. *Id.* at 31-32. In another scene, the heroine is introduced to a memorial statue of a late queen holding an infant in her arms. *Id.* at 25. There is also the scene of a surprising disappearance of a stain from a white item (in one work, a self-cleaning carpet; in another, a self-cleaning handkerchief). *Id.* These similarities, along with others highlighted in the FAC, amount to a more than *de minimis* resemblance between the works at issue.

Furthermore, because "substantial similarity is usually an extremely close issue of fact," *Unicolors, Inc.*, 853 F.3d at 985, the Court finds that additional evidence such as expert testimony would "aid in the objective literary analysis needed to determine the extent and qualitative importance of the similarities…in the works' expressive elements…" *Zindel*, 815 Fed. App'x at 159. The Ninth Circuit has not yet affirmed, in a published opinion, the dismissal of a case alleging infringement of a literary work without discovery. *See Astor-White v. Strong*, 733 Fed. App'x 407, 409 (9th Cir. 2018). While this does not mean that courts cannot dismiss cases that allege infringement of literary works without discovery, *see Masterson*, 821 Fed. App'x at 780, it does stress the difficulty of courts analyzing the entirety of extensive literary works, separating out

protectable and non-protectable elements, and then coming to a determination of substantial similarity.

The Court does not find that it can, as a matter of law, declare that the Works and Defendant's work are not substantially similar.  Plaintiff, at this stage, has pled enough to show a substantial similarity between the Works and *Nightweaver.*

<u>Combination of elements</u>.  Plaintiff also alleges that it is entitled to copyright protection because of the "selection, arrangement and coordination of otherwise unprotected aspects of Plaintiff's Works." FAC ¶ 98.  In its Opposition, Plaintiff argues that though certain elements be unprotected alone, "a copyright plaintiff may argue 'infringement… based on original selection and arrangement of unprotected elements.'" Opp. at 16 (citing *Skidmore*, 952 F.3d at 1074).

It is true that a combination of unprotectable elements may qualify for copyright protection.  To plead a selection-and-arrangement infringement, a plaintiff must show that the "works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements." *Skidmore*, 952 F.3d at 1075.

As the Court found above with the individual elements, the Court finds here that expert analysis would be helpful in filtering protectable from unprotectable similarities. This is especially so, given that even if elements are unprotectable as they stand alone, it is plausible that specific combinations of elements could be original and therefore protectable.  Expertise would aid in analyzing the different combinations and determining whether there are similarities there.

<u>Other similarities</u>.  Plaintiff also alleges that there are similarities in online marketing, graphic design, and book summaries.[4]  FAC ¶¶ 123-132, Exs. 6, 7, 8.  The

---

[4] Plaintiff also alleges that online reader feedback for *Nightweaver* "pointed out various additional oddities in the book which solidified Liz Ald's suspicions concerning

"online marketing/picture similarities" in Exhibit 6 do not refer at all the works themselves, but rather take from Defendant Gray's personal Pinterest and Facebook pages, and do not show any ties to *Nightweaver*. *Id.* Ex. 6. The Court finds that these allegations are not relevant at all to the causes of action. And there is a single alleged "graphic design" similarity, which refers to Ald's Instagram author profile picture (a pink rose) and the new Hatchette book cover (several red roses). *Id.* Ex. 7. The Court finds that these images are not similar. Finally, the book summaries, which Plaintiff alleges are similar, in fact contain only generic unprotectable elements and are not substantially similar. *Id.* Ex. 8.

As the Court already stated in its prior Order, "The *marketing* of the works is not relevant to the copyright infringement analysis of the *content* of the works." Order Denying Prelim. Inj. at 19 (emphasis in original). Nothing in the FAC has proven otherwise. The Court therefore finds that these alleged similarities do not show substantial similarity between Plaintiff and Defendant's works.

However, because Plaintiff has pled enough similarities on the elements and the combination of elements at this procedural stage, *see supra*, the Court DENIES Defendant's motion to dismiss on these grounds.

### B. Copying

#### 1. Access

##### a. Direct access

Plaintiff alleges that "Defendant Gray accessed Plaintiff's Works on Wattpad with her own Wattpad account." FAC ¶ 66. There are no facts to support this bare allegation. Plaintiff argues that it "requires discovery in order to confirm its suspicions concerning

---

infringement by Defendant Gray." FAC ¶¶ 125-129. Beyond the speculative nature of Plaintiff's allegations, reader reactions have no bearing in this extrinsic test analysis.

Defendant Gray's direct access," *id.* ¶ 67, but the Court finds that these "suspicions" are just that: suspicions, and not facts. This is not enough to plead direct access. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled on other grounds by Skidmore*, 952 F.3d 1051 (9th Cir. 2020) ("Access may not be inferred through mere speculation or conjecture.").

### b. Circumstantial theory of access

When there is no direct evidence of access, circumstantial evidence can be used to prove access by either showing that the plaintiff's work has been "widely disseminated" or establishing "a chain of events" that link the plaintiff's work and the defendant's access. *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).

<u>Chain of events</u>. Plaintiff alleges circumstantial access under a chain of events theory. FAC ¶¶ 80-84. To plausibly allege such a theory, Plaintiff must establish a "particular chain of events" that is "established between the plaintiff's work and the defendant's access to that work." *Three Boys Music Corp.*, 212 F.3d at 482; *see Lois v. Levin*, 2022 WL 4351968, at *4 (C.D. Cal. Sept. 16, 2022) (chain of events should "create a reasonable possibility that the defendant had access to the plaintiff's work").

Plaintiff alleges that Defendant Gray, allegedly a Wattpad user herself, encountered Book 1 on Wattpad at some point while she was developing her own book *Nightweaver*, which led her to view Liz Ald's author page, and then to view Book 2. FAC ¶ 80. Plaintiff then alleges that Defendant Gray, after using the Works to create *Nightweaver*, "created a fake manuscript" in order to obscure her creation timeline. *Id.* ¶ 83. There are no other facts pled. Plaintiff's allegations do not show that there was a "reasonable opportunity" that Defendant Gray saw and copied Plaintiff's work. *Three Music Boys Corp.*, 212 F.3d at 482. Instead, Plaintiff's allegations are "mere speculation or conjecture." *Id.*

<u>Widespread dissemination</u>.  Plaintiff pleads a stronger circumstantial theory of access in widespread dissemination.  "[W]idespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016).  And "although the Ninth Circuit has not identified a specific threshold for the level of public engagement with a work that constitutes 'wide dissemination,' its precedent indicates that a work's degree of commercial success and/or notoriety must be substantial." *Segal v. Segel*, 2022 WL 198699, at *9 (S.D. Cal. Jan. 21, 2022).

Plaintiff alleges that its Works were widely disseminated, based on their alleged "commercial success and notoriety" on Wattpad, the online publishing platform.  FAC ¶ 4.  Plaintiff alleges that Book 1 had 100,000 views by July 20, 2022, and was ranked #1 on Wattpad's "Fiction" section for 12+ weeks, FAC ¶¶ 51-52, and that it reached over 630,000+ views by September 12, 2022, *id.* ¶ 3.  For Book 2, Plaintiff alleges that it had 9,700 views in September 2022, *see id.* ¶ 57 (photo), which is when its first 54 of 198 chapters were available according to Plaintiff, *id.* ¶ 64, and at some unspecified point, it had 175,000 total views, *id.* ¶ 76.  Thus, Plaintiff alleges that Plaintiff's Works combined for "over 1 million views" on Wattpad, FAC ¶ 58.

Defendant argues that Plaintiff fails to show that Book 2 was widely disseminated, even though most of the alleged similarities with Defendant's book come from Book 2.  Furthermore, Defendant argues that Plaintiff must show how the number of views/reads on Wattpad correspond to the number of people who read the Works.  Because there is a difference between how "views" and "reads" are calculated by Wattpad, *see* RJN Item No. 5, the total number of "views" might not be an accurate approximation of how many unique readers are engaging with the Works.

The Court's prior Order agreed that Defendant's arguments held force in opposition to the preliminary injunction, but now, at this procedural stage, the Court need

only to find that Plaintiff's theory of widespread dissemination is plausible. Since Plaintiff alleges that Book 1 had over 630,000 views and Book 2 had over 175,000 views on Wattpad, this is significant enough to find that there was a substantial degree of commercial success. Even though "views" and "reads" are different metrics on Wattpad, and even though Book 1 had more views than Book 2 (the work that contained most of the alleged similarities), Plaintiff has pled that there was enough visibility for the Works on the Wattpad platform such that Defendant Gray's access to the Works can be circumstantially established.

### 2. Similarities probative of copying

To plead copying, Plaintiff must show a "probative or striking similarity [that] shows that the similarities between the two works are due to 'copying rather than… coincidence, independent creation, or prior common source.'" *Skidmore*, 952 F.3d at 1064 (citation omitted). "A finding of such similarity may be based on the overlap of unprotectable as well as protectable elements." *Id.* (citation omitted). The similarities do not need to be extensive or involve only protectable elements in the work, but should be "similarities one would not expect to arise if the two works had been created independently." *Whitehead v. Netflix, Inc.*, 2022 WL 17342602, at *11 (N.D. Cal. Nov. 30, 2022) (quotation omitted).

For the reasons stated in its discussion of unlawful appropriation and substantial similarities, *see supra*, the Court finds that Plaintiff has pled enough similarities probative of copying here.

## II.   SECONDARY INFRINGEMENT

Plaintiff also pleads a cause of action for contributory (Count Two) and vicarious infringement (Count Three). FAC ¶¶ 164-75. To allege contributory copyright infringement, Plaintiff must allege that the defendants knew of the direct infringement and "either induced, caused, or materially contributed to the infringing conduct."

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). For vicarious copyright infringement, Plaintiff must allege that the defendants had both the "right and ability to supervise the infringing activity" and "a direct financial interest" in the activity. *Id.* at 1071 (citation omitted).

Here, while Plaintiff has successfully pled a claim for direct copyright infringement, *see supra*, her secondary infringement claims fail. There are no factual pleadings in the FAC that support these secondary infringement claims. *See* FAC ¶¶ 164-75. The FAC merely asserts, in a conclusory manner, that the legal elements of these claims are met. *Id.* This is not enough. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In its Opposition, Plaintiff states that the complaint "clearly alleged that Defendants are infringing on their screenplay and [has] plausibly alleged Defendants' participation in the promotion and distribution of *Nightweaver*." Opp. at 23. However, there is no mention of a screenplay in the FAC at all, and the paragraphs cited by Plaintiff are not in any way relevant to any secondary infringement claims.

The Court therefore GRANTS the Motion as to the secondary infringement claims and DISMISSES Counts Two and Three with leave to amend.

## III.   STATUTORY DAMAGES AND ATTORNEYS' FEES

In order to recover statutory damages and attorney's fees under the Copyright Act, a plaintiff "must plead facts showing that the alleged infringement commenced after his registration" of the allegedly infringed work. *Gardner v. CafePress Inc.*, 2014 WL 7183704, at *3 (S.D. Cal. Dec. 16, 2014); 17 U.S.C § 412(2). Infringement "commences" for the purposes of § 412 when the first act occurs in a series of acts constituting continuing infringement of the same kind. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 700-01 (9th Cir. 2008).

1   Lesley Aldrich allegedly registered the copyrights to the Works on February 5,
2   2024.  FAC ¶¶ 31-32.  According to Defendants, Gray completed *Nightweaver* in 2022
3   and began publishing it in October 2023, months before Plaintiff registered its works.
4   Mot. at 22.  Because of this clear timeline, Defendants argue that Plaintiff is not entitled
5   to statutory damages and attorney's fees as a matter of law.  *Id.* at 21-22.

6   Plaintiff argues that "Hatchette's version of *Nightweaver* is not the same as
7   previously published versions" and is therefore a distinct infringement.  Opp. at 22.
8   Plaintiff bases this argument on statements made by Alexandra Hightower who stated in
9   her declaration supporting opposition of the preliminary injunction that Hatchette's
10  editorial team spent "upwards of 200 hours of labor" working on *Nightweaver*, ECF No.
11  9-3 (Hightower Decl.) ¶ 27.  Plaintiff asserts that it is "plausible" that the "new" version
12  of *Nightweaver* is not the same as the "old" version.  Opp. at 22.  Since the Hatchette
13  version would be a separate and distinct infringement beginning *after* Plaintiff's
14  registration of the Works, Plaintiff argues, the statutory damages and attorney's fees
15  would therefore be available under 17 U.S.C § 412(2).

16  However, Plaintiff has alleged nothing in the FAC that would support the
17  contention that the Hatchette edition is a distinct infringement. Plaintiff must show that
18  there is a legally significant difference between the Hatchette and Gatekeeper editions.
19  *See Derek Andrew*, 528 F.3d at 701.  Nothing in the FAC alleges this.  Plaintiff
20  incorporates and references the cease-and-desist letter, which appears to identify the 2023
21  Gatekeeper edition as being the allegedly infringing work.  FAC ¶¶ 10, 133-135; see ECF
22  No. 9-2.  But there is nothing in the FAC that distinguishes between the Gatekeeper and
23  Hatchette editions.  And in fact, as the Court noted in its discussion of judicial notice, *see*
24  *supra*, Plaintiff suggests that the Hatchette edition is an ongoing infringement.  *See* FAC
25  ¶ 153 ("defendants to this suit are publishers of Defendant Gray's infringing work, with
26  Hachette being the most recent publisher").

For these reasons, the Court GRANTS Defendants' motion to dismiss the claims for statutory damages and attorney's fees under the Copyright Act with leave to amend.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES IN PART and GRANTS IN PART the Defendants' motion to dismiss with leave to amend.

**IT IS SO ORDERED.**

Dated: August 4, 2025

Hon. Gonzalo P. Curiel
United States District Judge