1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| L ALD LLC, a Florida Limited Liability Company, | Case No.:  24-CV-02195-GPC-MSB |
| Plaintiff, | **ORDER:**<br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT's REQUEST FOR INCORPORATION BY REFERENCE**<br>**(2) GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS** |
| v. | |
| REBEKAH M. GRAY, an individual; MERLIN PUBLISHING LLC, a Texas Limited Liability Company d/b/a MERLIN'S PEN PUBLISHING; GATEKEEPER PRESS, a Florida Limited Liability Company; INGRAM INDUSTRIES INC., a Tennessee corporation d/b/a INGRAM CONTENT GROUP and/or LIGHTNING SOURCE; HATCHETTE BOOK GROUP, a New York corporation; and DOES 1-50, inclusive, | **[ECF No. 54]** |
| Defendants. | |

        Before the Court are Defendants Rebekah M. Gray, Hachette Book Group, and

Merlin Publishing LLC, d/b/a Merlin's Pen Publishing's (collectively, "Defendants")

                                      1

request for judicial notice, ECF No. 54-7 ("RJN"), and Defendants' motion to dismiss, ECF No. 54-1 ("Mot." or "Motion"). The motion to dismiss has been fully briefed. ECF Nos. 59, 60. The Court finds the matters suitable for decision on the papers and VACATES the hearing set for November 21, 2025.

Based upon a review of the briefs, the supporting documentation, the applicable law, and for the foregoing reasons, the Court hereby DENIES IN PART and GRANTS IN PART Defendants' motion to dismiss.

## FACTUAL BACKGROUND

This is a copyright infringement controversy involving several works of young adult ("YA") fantasy fiction.

Under the pseudonym "Liz Ald," sisters Lesley and Lindsey Aldrich write YA novels. ECF No. 52 ("SAC") ¶ 27. They have authored a three-novel series, the first two of which are at issue here: *The Boy with the Beautiful Name* and *The Boy with the Beautiful Soul* ("Book 1" and "Book 2," respectively; "the Works," collectively). *Id.* ¶¶ 29, 35. Together, they own the Plaintiff L ALD LLC. *Id.* ¶ 16.

Around July 25, 2020, the two sisters began using the website Wattpad to post fantasy stories. *Id.* ¶ 36. Wattpad is a "leading web-novel platform," where authors can publish their content; it has over 650 million authored works on its site. *Id.* ¶¶ 37, 39.

According to Plaintiff, a portion of Book 1 was first posted on Wattpad around January 8, 2022. *Id.* ¶ 60. Plaintiff posted multiple chapters of Book 1 each month on Wattpad, with the entire book posted to the website by July 2022. *Id.* ¶ 62. Plaintiff alleges that Book 1 "enjoyed immediate commercial success and notoriety" on Wattpad, and on July 20, 2022, Book 1 was ranked #1 in the Fiction category for at least 12 weeks and reached more than 100,000 reads. *Id.* ¶¶ 2, 49. By August 7, 2022, Book 1 had reached 300,000 views on Wattpad. *Id.* ¶ 52.

In August 2022, chapters of Book 2 began to be uploaded to Wattpad. *Id*. ¶ 62. On September 12, 2022, Book 1 was featured on the "Binge from Start to Finish" category. *Id*. ¶ 53. Chapters of Book 2 continued to be uploaded throughout this time with the entire book being completely posted on Wattpad by March 2023. *Id*. ¶ 62. Plaintiff also alleges that Book 2 "was met with similar commercial success and notoriety, reaching over 175,000 views upon initial completion." *Id*. ¶ 4.

Defendant Rebekah Gray is an author who writes YA fiction under the pen name RM Gray. *Id*. ¶ 17. On July 10, 2023, Defendant Gray registered the copyright in *Nightweaver* as an unpublished literary work with a creation date of 2022. *Id*. ¶ 154. Defendants Gray and Merlin published *Nightweaver* in October 2023 through Defendant Gatekeeper Press. *Id*. ¶ 155.

On February 5, 2024, Lesley Aldrich obtained registered copyrights for both books and then transferred the interests in these copyrights to Plaintiff. *Id*. ¶¶ 29-32.

On March 14, 2024, Defendant Hachette acquired *Nightweaver*. *Id*. ¶ 156. After acquiring the book, Plaintiff alleges that Defendant Hachette made "several, legally significant changes to *Nightweaver*," which included 200 hours of work from the editorial team and 39 hours of work from the design team who altered the cover and layout of the book as well as the page edges. *Id*. ¶ 157. The edited version of *Nightweaver* was copyright registered on April 29, 2025, with a creation date of 2025 and a publication date of March 4, 2025. *Id*. ¶ 163.

At some point in time, Plaintiff concluded that there were similarities between Plaintiff's Works and *Nightweaver*, and on March 20, 2024, Plaintiff sent a cease-and-desist letter to Defendants Gray and Gatekeeper Press, LLC, asserting copyright infringement. *Id*. ¶ 131. Gray's counsel responded to the letter, stating that *Nightweaver* was written before any publication or authoring of Liz Ald's "Beautiful Boy" series, so Defendant Gray could not have copied any element of it. *Id*. ¶ 132. As supporting

evidence, Defendant Gray's counsel sent Plaintiff copies of email exchanges between Gray and her editor in June 2022 in which Gray allegedly provided the complete manuscript. *Id.* ¶ 133.

Gray's counsel also sent a Word document that was purportedly the attached manuscript for *Nightweaver*. *Id*. Plaintiff alleges that it discovered "peculiarities" from the properties of the manuscript, namely that "the 100,000-word document showed that in its lifetime…the document had only two (2) revisions and a total editing time of two (2) minutes." *Id.* ¶ 135. Plaintiff also alleges that the document contained a manipulated Create Date of June 12, 2022, which would pre-date the complete publication of Book 1 by a few weeks. *Id.* ¶¶ 6, 136. Finally, Plaintiff noted that the document had full blank pages at nearly every chapter break, which Plaintiff alleges was done to have the file size match the file size of the original attachment that accompanied Defendant Gray's June 2022 email to her editor. *Id*. ¶ 142. Based on this, Plaintiff alleges that Defendant Gray had manipulated the Word document manuscript to make it seem like its creation pre-dated Plaintiff's Works. *Id.* ¶ 136.

Plaintiff maintains that Defendant Gray has continued to refuse to provide the authenticated manuscript and native files of the emails and attachments for Plaintiff's review. *Id.* ¶¶ 143, 147.

## PROCEDURAL HISTORY

On November 25, 2024, Plaintiff moved for preliminary injunction to enjoin Defendants "from offering for sale on any medium the novel titled *Nightweaver* by RM Gray." ECF No. 3. The Court denied the motion for preliminary injunction on January 28, 2025. ECF No. 19 ("Order Denying Prelim. Inj.").

Defendants filed a motion to dismiss the complaint, ECF No. 22, and then Plaintiff filed an amended complaint on March 10, 2025, ECF No. 28.

1     On April 4, 2025, Defendants filed a motion to dismiss the amended complaint.

2  ECF No. 33.  The motion was granted in part and denied in part with leave to amend.

3  ECF No. 47. Plaintiff then filed their second amended complaint on September 4, 2025.

4     On September 18, 2025, Defendants filed a second motion to dismiss. ECF No. 54.

5  The motion to dismiss has been fully briefed. ECF Nos. 59, 60.

6                              **LEGAL STANDARD**

7     A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint and

8  whether it has "state[d] a claim upon which relief can be granted."  Fed. R. Civ. P.

9  12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a

10  cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See*

11  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean*

12  *Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

13     A complaint may survive a motion to dismiss only if, taking all well-pleaded

14  factual allegations as true, it contains factual matter that "state a claim to relief that is

15  plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

16  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is facially plausible when the

17  factual allegations allow "the court to draw the reasonable inference that the defendant is

18  liable for the misconduct alleged."  *Id.*

19     Where a motion to dismiss is granted, "leave to amend should be granted 'unless

20  the court determines that the allegation of other facts consistent with the challenged

21  pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*,

22  957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture*

23  *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

24                      **INCORPORATION BY REFERENCE**

25     Generally, on a motion to dismiss, courts will limit their review to the contents of

26  the complaint and may only consider extrinsic evidence that is properly presented as part

27

28

24-CV-02195-GPC-MSB

of the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, courts can incorporate by reference certain documents that are not found within, or attached to, the plaintiff's pleading without converting the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The goal of the doctrine is to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Essentially, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 908.

In addition to being extensively referenced in the complaint, the document can only be incorporated by reference if the authenticity of its contents is not disputed by the parties. *Knievel*, 393 F.3d at 1076. Once the document is incorporated by reference, a court is allowed to "treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*. However, at the same time, it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003 (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

Defendants request the Court to consider, based on incorporation by reference, several items. ECF No. 54-7 ("RJN"). The items are as follows: (1) *The Boy with the Beautiful Name* and *The Boy with the Beautiful Soul*, which were previously lodged with the Court on an Amazon Kindle eBook reader on December 13, 2024, *see* Notice of Lodging, ECF No. 10; (2) *Nightweaver*, which was previously lodged with the Court on February 14, 2025, using a print copy of the standard edition of *Nightweaver* as published

by Hachette Book Group, *see* Notice of Lodging, ECF No. 23; and (3) a June 13, 2022 email from Ms. Gray to her editor, including its attachment of a *Nightweaver* manuscript, which was lodged with the Court on September 18, *see* ECF No. 53.

As it did before, the Court finds that Item No. 1 and Item No. 2 are incorporated by reference in the complaint. ECF No. 47 at 6-7.[1] Both items lie at the heart of the complaint, and there is no dispute as to the accuracy and authenticity of these copies. *See* ECF No. 59-1 at 5.

As to Item No. 3 (Defendant Gray's email and attachment to her editor), Defendants argue that the SAC extensively references the email Defendant Gray sent to her editor and the attachment that contains a manuscript of *Nightweaver*. ECF No. 54-7 at 4-5. They also contend that the copies of the email and attachment are properly authenticated and not in reasonable dispute. *Id.* at 5. In response, Plaintiffs maintain that though the email and attachments are referenced in the complaint, the SAC puts their authenticity directly in dispute. ECF No. 59-1 at 9-10.

Turning first to Defendant Gray's email, Plaintiff does not argue that the email itself is inauthentic as seen in both the complaint and the opposition to the RJN. *See* SAC ¶¶ 142, 144; ECF No. 59-1 at 10. Plaintiff references the date of the email but focuses and specifically takes issue with the authenticity of the attachments. *Id.* Thus, the Court finds that the email and the fact that the email had an attachment are incorporated by reference.

As for the attachment itself, the SAC does reference the attached document frequently. However, the very focus of those references is to dispute its authenticity, which Plaintiff supports with specific details it finds suspicious. *See* ECF No. 59-1 at 10;

---

[1] Throughout the order, the pagination for docketed documents is derived from the numbering generated by the ECF system.

24-CV-02195-GPC-MSB

1  SAC ¶¶ 137, 145. Thus, the Court declines to consider the attachment under the

2  incorporation-by-reference doctrine.

3  **DISCUSSION**

4  Defendant moves to dismiss, arguing that (1) the SAC fails to state a direct

5  infringement claim, (2) the SAC fails to state a claim for contributory infringement, and

6  (3) Section 412 bars statutory damages and fees. Mot. at 13-31. In response, Plaintiff

7  argues that (1) the Court should find, as with the prior motion to dismiss, that the direct

8  copyright infringement claim is properly alleged, (2) contributory infringement has been

9  plausibly pled, and (3) Section 412 does not bar statutory damages given the timing and

10  extent of the infringing activity. *See* ECF No. 59 ("Opp.").

11  **I.    DIRECT COPYRIGHT INFRINGEMENT**

12      **a.  New Determination of the Same Claim**

13  In response to Defendants challenging the plausibility of the direct copyright

14  infringement claim once again, Plaintiffs contend that Defendants have brought an

15  improper motion for reconsideration as to this claim and encourages the Court to follow

16  its reasoning in the prior motion to dismiss. *Id*. at 12-15. Defendants, however, maintain

17  that the Court is required to make a new determination with an amended complaint

18  because they bring new arguments. ECF No. 60 ("Rep.") at 6-8.

19  The law of the case doctrine states that "a court will generally refuse to reconsider

20  an issue that has already been decided by the same court or a higher court in the same

21  case." *Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012). When the issue was

22  decided by the same district court, that court may follow its earlier holding if it

23  "determines the amended complaint is substantially the same as the initial complaint."

24  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018). However,

25  "the new complaint is the only operative complaint before the district court" and the court

26  "is not ... bound by any law of the case." *Id.* In other words, the law of the case doctrine

27

28

8

in this context "is in no way a limit on a court's power to revisit, revise, or rescind an interlocutory order prior to entry of final judgment in the case." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir.2001) (internal quotation marks and citations omitted).

Here, because Plaintiff filed a SAC, the law of the case doctrine does not apply. At the same time, Plaintiff argues and the Court notes that that direct copyright infringement allegations in the SAC and FAC are the same. *See* ECF No. 52-1. Thus, the Court retains the discretion to decline consideration of this claim or to rule on new arguments made by Defendants. *See Lopez v. Dang*, No. SACV 21-353 JVS (KESx), 2022 WL 1567452 (C.D. Cal. Apr. 21, 2022), *aff'd*, No. 22-55495, 2023 WL 2301511 (9th Cir. Mar. 1, 2023) ("Just as Plaintiffs may bring new allegations in its amended complaint, Silverstein may present new arguments in his motion to dismiss, and the Court may rule on those arguments.").

The Court will exercise its discretion and conduct a full analysis, incorporating the arguments that Defendants bring in this instant motion.

### b. Merits

To sustain a copyright claim against a motion to dismiss, Plaintiff must allege (1) "ownership of a valid copyright" and (2) "copying of constituent elements of the work that are original." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018). As in the first motion to dismiss, there is no dispute on the first prong. Instead, this claim depends on whether the second prong is plausibly alleged.

The second prong, however, is bifurcated into two distinct components: "copying" and "unlawful appropriation." *See Woodland v. Hill*, 136 F.4th 1199 (9th Cir. 2025); *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Plaintiff must plausibly allege both components to survive a motion to dismiss.

/ / /

24-CV-02195-GPC-MSB

### i. Copying

Because independent creation of a work is a complete defense to copyright infringement, a plaintiff must first adequately plead that the defendant copied the work at issue. *Skidmore*, 952 F.3d at 1064. Because direct evidence of copying is rare, copying is often proven circumstantially "by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

### 1. Access

When there is no direct evidence of access, circumstantial evidence can be used to prove access by either showing that the plaintiff's work has been "widely disseminated" or establishing "a chain of events" that link the plaintiff's work and the defendant's access. *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). However, if circumstantial evidence of access cannot be shown, the plaintiff's claim "survives only if the two works are so 'strikingly similar' as to preclude 'the possibility of independent creation,'" which raises the bar plaintiffs must meet. *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025) (quoting *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017)).

### a. No Reasonable Possibility of Access & Striking Similarity

Defendants argue that the fact that Defendant Gray transmitted a manuscript of *Nightweaver* on June 13, 2022 forecloses a reasonable possibility that Defendant Gray accessed the works, disposing of the need to address Plaintiff's access theories. Mot. at 14-15. By the transmission of that email, Book 1 had not yet been completed, and none of Book 2 had been posted. *Id*. Thus, in Defendants' view, access has not been established, and the literary works must be compared under a higher, "strikingly similar" standard. *Id*. at 16.

24-CV-02195-GPC-MSB

However, given that the content of the attachment cannot be incorporated by reference at this stage, the existence of the email and its date are not enough to be dispositive. The date of the email does place the manuscript before Book 1 had been fully posted, but the email's message only indicates the manuscript is the "current draft of *Nightweaver*." ECF No. 54-10. There is a long period between that draft and the work's copyright registration on July 10, 2023, where substantial changes could have been made. Additionally, by July 10, 2023, both Book 1 and Book 2 had been completely posted on Wattpad for Defendant Gray to potentially access. SAC ¶ 62. Thus, the email's existence is not enough to foreclose potential access theories at this stage. After the completion of discovery, Defendants are free to renew this argument as part of a dispositive motion.

### b. Theories of Access

At the pleading stage, plaintiff must allege a reasonable possibility of access. *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009); *Loomis v. Cornish*, 836 F.3d 991, 995 (9th Cir. 2016). A reasonable possibility of access is adequately pled if a reasonable finder of fact could infer the defendant had a reasonable opportunity to copy the work at issue. *Shame on You Prods., Inc. v. Elizabeth Banks*, 120 F. Supp. 3d 1123, 1149 (C.D. Cal. 2015), *aff'd sub nom. Shame on You Prods., Inc. v. Banks*, 690 F. App'x 519 (9th Cir. 2017) The allegations must, therefore, create more than a bare possibility of access and rise above mere speculation and conjecture. *See Woodland v. Hill,* 136 F.4th 1199, 1207 (9th Cir. 2025).

Plaintiff has alleged three theories of access: direct, chain of events, and widespread dissemination. SAC ¶¶ 64-82. The SAC, however, has not made any additions or changes to its direct access and chain of events allegations from the first amended complaint, which the Court previously found to be mere speculation or conjecture. *See* ECF No. 52-1; ECF No. 47 at 12-13. The Court, therefore, adopts the same analysis and findings it conducted in that prior order. The Court, then, turns to the

final widespread dissemination allegation, which was previously found to be adequately pled and of which Defendants continue to dispute.

"[W]idespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016). And "although the Ninth Circuit has not identified a specific threshold for the level of public engagement with a work that constitutes 'wide dissemination,' its precedent indicates that a work's degree of commercial success and/or notoriety must be substantial." *Segal v. Segel*, 2022 WL 198699, at *9 (S.D. Cal. Jan. 21, 2022). "[S]ocial media and other digital-sharing platforms could make it easier for plaintiffs to show that defendants had access to their materials—but only *if* they can show that the defendants had a reasonable chance of seeing their work under that platform's algorithm or content-sharing policy." *Woodland*, 136 F.4th at 1209.

Defendants have argued circumstantial access cannot be established through widespread dissemination because of the existence of Defendant Gray's email. Mot. at 15. Specifically, because the drafted manuscript was sent via email on June 13, 2022 before Book 2 had even begun to be posted, Defendants argue that dissemination can only be evaluated by that June 13, 2022 date. *Id*. The SAC alleges Book 1 had 100,000 views and was ranked #1 on July 20, 2022, SAC ¶¶ 49-51, so at the time the email was sent, Book 1 did not yet have a ranking on Wattpad's page and likely had fewer than 100,000 views. Mot. at 16. Given that framing, Defendants argue that the Works did not have substantial notoriety to adequately plead access.

However, as discussed in the previous subsection, Defendant Gray's email cannot, at this stage, so definitively abridge the time and facts the Court should consider for its analysis. The substance of the attachment cannot be incorporated by reference, and thus, the Court is unable to conclude that the manuscript was mostly left untouched before

24-CV-02195-GPC-MSB

being published the following year. The Court only notes that the email refers to the attachment as a current draft, which would not dispositively close off consideration of facts after June 13, 2022.

Without that time limitation, the Court finds Plaintiff has adequately pled access through widespread dissemination.

As before, Plaintiff alleges that its Works were widely disseminated, based on their "commercial success and notoriety" on Wattpad.  SAC ¶ 4.  Plaintiff alleges that Book 1 had 100,000 views by July 20, 2022, and was ranked #1 on Wattpad's "Fiction" section for 12+ weeks. *Id.* ¶ 2. By September 12, 2022, it reached over 630,000 views. *Id.* ¶ 3. For Book 2, Plaintiff alleges that it had 9,700 views in September 2022, *see id.* ¶ 55 (photo), which is when its first 54 of 198 chapters were available, *id.* ¶ 62, and at some unspecified point, it had 175,000 total views, *id.* ¶ 74.  Thus, Plaintiff alleges that Plaintiff's Works combined had "over 1 million views" on Wattpad. *Id.* ¶ 56.

At this procedural stage, the Court need only find that Plaintiff's theory of widespread dissemination is plausible. Plaintiff alleges that Book 1 had over 630,000 views and Book 2 had over 175,000 views on Wattpad; this is significant enough to find that there was a substantial degree of commercial success.  Additionally, even though "views" and "reads" are different metrics on Wattpad, and even though Book 1 had more views than Book 2 (the work that contained most of the alleged similarities), Plaintiff has pled that there was enough visibility for the Works on the Wattpad platform such that Defendant Gray's access to the Works can be circumstantially established.

### 2. Similarities Probative of Copying

After plausibly establishing access, Plaintiff must also show similarities probative of copying. *Art Attacks Ink, LLC v. MGA Entertainment Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Probative similarity is shown when the "similarities between the two works are due to 'copying rather than… coincidence, independent creation, or prior common

24-CV-02195-GPC-MSB

source.'" *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (citation omitted). "A finding of such similarity may be based on the overlap of unprotectable as well as protectable elements." *Id*. (citation omitted). The similarities do not need to be extensive or involve only protectable elements in the work but should be "similarities one would not expect to arise if the two works had been created independently." *Whitehead v. Netflix, Inc*., No. 22-cv-4049-CRB, 2022 WL 17342602, at *11 (N.D. Cal. Nov. 30, 2022) (quotation omitted).

Here, Plaintiff here alleges 42 plot similarities, 58 similar character traits, and 99 scene similarities. Plaintiff has also provided several charts to compare those similarities. As discussed more below, many of those similarities are non-protectable, and as Defendant points out, some of those identified similarities do not recognize notable differences. However, this prong of copying does not require the Court to make distinctions between protectable elements. Given the number of similarities alleged, the presence of some protectable elements, and the possibility that the selection and arrangement of the similarities might lead to another protectable aspect of the Works, Plaintiff has adequately shown similarities probative of copying.

### ii. Unlawful Appropriation

To allege unlawful appropriation, Plaintiff must plead facts showing that the works share substantial similarities. *Skidmore*, 952 F.3d at 1064. "[W]hether works are substantially similar involves a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.' The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *Rentmeester v. Nike, Inc*., 883 F.3d 1111, 1118 (9th Cir. 2018). Under the "extrinsic test," the court first filters out "the unprotectable elements of the plaintiff's work – primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id*. The remaining

protectable elements are then compared "to corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id*. "For literary works, '[t]he extrinsic test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in the two works.'" *Masterson v. Walt Disney Co*., 821 F. App'x 779, 782 (9th Cir. 2020) (quotation omitted).

"Only the extrinsic test's application may be decided by the court as a matter of law…" *Rentmeester*, 883 F.3d at 1118. (citation omitted). Dismissal may be disfavored at this stage, if additional evidence would "help inform the question of substantial similarity." *Alfred v. Walt Disney Co*., 821 Fed. App'x 727, 719 (9th Cir. 2020). But "determining substantial similarity does not necessarily require expert testimony." *Masterson*, 821 Fed. App'x at 781. Instead, the court is required to do what it always must do when faced with a 12(b)(6) motion to dismiss: determine whether the complaint states a plausible claim. Although ruling as a matter of law at the pleading stage can sometimes be appropriate, the Ninth Circuit has "long held that summary judgment is not highly favored on questions of substantial similarity." *Zindel as Tr. For David Zindel Tr. V. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020) (cleaned up and citation omitted). "Courts must be just as cautious before dismissing a case for lack of substantial similarity on a motion to dismiss." *Id*. Dismissal is only warranted if, as a matter of law, the similarities between the two works are only unprotectable material or are de minimis, such that reasonable minds could not differ on the issue of substantial similarity. *See id*. (*citing L.A. Printex Indus., Inc. v. Aeropostale, Inc*., 676 F.3d 841, 848 (9th Cir. 2012), *abrogated on other grounds as recognized by Unicolors, Inc. v. H&M Hennes & Mauritz, L.P*., 959 F.3d 1194 (9th Cir. 2020)). If additional evidence uncovered in discovery "could shed light on any issues that actually matter to the outcome," then dismissal at the pleading stage is inappropriate. *See Rentmeester*, 883 F.3d at 1123.

24-CV-02195-GPC-MSB

1

### 1. Substantial Similarity

2    In its previous order, the Court found that Plaintiff has provided enough evidence

3 of similarities that go beyond a *de minimis* level, such that reasonable minds could differ

4 on whether there is substantial similarity between Plaintiff's Works and *Nightweaver*. In

5 doing so, the Court analyzed Plaintiff's charts highlighting character, plot, and scene

6 similarities and filtered out the similarities that were too general to be protectable ideas,

7 such as generic and common fantasy and romance tropes. This included the

8 characterization of the heroine as smart and sassy with dark brown hair, or that the

9 heroine visits a garden with the lead male love interest. SAC ¶ 113. The Court also

10 filtered out similarities that were only common phrases, verbs, adjectives, and idioms.

11 *See, e.g.,* ECF No. 28-5, Ex. 5 (#53: "Sara bit her lip" compared with "I bite my lip.").

12    After filtering out the non-protectable elements, the Court compared the remaining

13 protectable elements. This included Plaintiff's allegations that both works feature an

14 antagonist who has a tattoo on his arm that identifies him with a rebel group of pirates

15 causing fear and mayhem; the lead female sees the tattoo early in the story but doesn't

16 know the true identity of the antagonist until the end of the book, where – in a major plot

17 twist – he reveals his identity. SAC ¶ 110. The Court also identified surprising scene

18 similarities that Plaintiff highlights in the complaint, such as a garden picnic with apple

19 pie made from a cookbook owned by someone other than the protagonist and the male

20 character mentions that he dislikes flowers. *Id.* ¶ 113.  In another scene, the heroine is

21 introduced to a memorial statue of a late queen holding an infant in her arms. *Id.*  There

22 is also the scene of a surprising disappearance of a stain from a white item (in one work,

23 a self-cleaning carpet; in another, a self-cleaning handkerchief). *Id.* From these

24 similarities, the prior order held that there was more than *de minimis* resemblance

25 between the works at issue. It also noted that, given determining substantial similarity is a

26 close issue of fact, additional evidence such as expert testimony would "aid in the

27

28

24-CV-02195-GPC-MSB

objective literary analysis needed to determine the extent and qualitative importance of the similarities…in the works' expressive elements…" *Zindel as Tr. For David Zindel Tr. V. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020). While this does not mean that courts cannot dismiss cases that allege infringement of literary works without discovery, *see Masterson*, 821 Fed. App'x at 780, it does stress the difficulty of courts analyzing the entirety of extensive literary works, separating out protectable and non-protectable elements, and then coming to a determination of substantial similarity.

Defendants have encouraged the Court to alter course in this instant motion. Defendants first emphasize *Biani*, highlighting that it affirmed dismissal of a case alleging infringement of a literary work without discovery. Mot. at 23. Defendants also contend that the Court need not require expert testimony to make its substantial similarity determination, citing several cases in support. *Id*. at 24. Finally, Defendants argue that the protectable elements that the Court previously identified were mischaracterizations presented by Plaintiff and would, thus, not meet substantial similarity when correctly represented. *Id*. at 25-27. The Court discusses each of these three arguments in turn.

First, the Court finds Defendants' reliance on *Biani* unconvincing. *Biani* involved a Plaintiff who claimed her three original and copyrighted characters were infringed by a television show. *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 960 (9th Cir. 2025). In finding the claim failed under the unlawful appropriation prong, the *Biani* court noted that all similarities were unprotectable as they focused on characteristics of being similarly aged, "strong," "beautiful," "pale brunettes," and dressed in Victorian attire, and on a plot where "women reject[ed] the norms of her era." *Id*. at 965.

This is quite different from the facts here. Plaintiff does not claim only her characters have been infringed but also that entire plots and scenes have been copied. While the SAC does argue unprotectable elements similar to those in *Biani*, the Court had

24-CV-02195-GPC-MSB

1    previously filtered the unprotectable elements out and still found elements that were
2    protectable and substantially similar.

3         Defendants' second contention that expert testimony is not required is also not
4    compelling. Though courts can dismiss infringement claims without discovery or expert
5    testimony at this stage, the Court retains discretion to determine whether expert testimony
6    would aid in a close question of fact, especially based on the complexity of the
7    allegations, the material before it, and its determination of protectable elements. *See*
8    *Zindel*, 815 F. App'x at 160; *see also Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir.
9    1990), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led*
10   *Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) ("Even if a copied portion be relatively small in
11   proportion to the entire work, if qualitatively important, the finder of fact may properly
12   find substantial similarity."). The Court finds that expert testimony would be helpful in
13   the objective literary analysis needed to determine the extent and qualitative importance
14   of the identified similarities. Further, expert testimony may aid in reviewing the
15   authenticity of the manuscript that was reportedly emailed by Defendant Gray on June
16   13, 2022.

17        Finally, Defendants contend that the Court's finding of four protectable elements
18   are based on Plaintiff's misrepresentations. Thus, Defendants maintain that, if those
19   mischaracterizations are corrected, there would be no notable protectable elements, and
20   thus, the Court would no longer be able to find substantial similarity.

21        However, though Defendants' identified differences are noted, the Court continues
22   to find the four elements protectable. For the prior order, the Court conducted an actual
23   reading of the works at issue, which allowed it to identify the differences between the
24   literary works that Defendants identify. However, those differences did not, and continue
25   to not, change the Court's conclusion. Thus, Plaintiff has adequately pled substantial
26   similarity.

27

28

24-CV-02195-GPC-MSB

## 2. Combination of Elements

To plead a selection-and-arrangement infringement, a plaintiff must show that the "works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements." *Skidmore*, 952 F.3d at 1075.

As it found it its prior order, the Court finds here that expert analysis would be helpful in filtering protectable from unprotectable similarities. This is especially so, given that even if elements are unprotectable as they stand alone, it is plausible that specific combinations of elements could be original and therefore protectable. Expertise would aid in analyzing the different combinations and determining whether there are similarities there.

In sum, Defendants continue to plausibly allege direct infringement, and the Court DENIES Defendant's motion to dismiss as to this claim.

## II.    CONTRIBUTORY INFRINGEMENT

Defendants argue that the contributory infringement claim should be dismissed because the direct infringement claim has not been successfully established. However, as discussed above, the direct infringement claim has met the plausibility standard. Thus, Defendants argument fails, and the Court DENIES the motion as to the contributory infringement claim.

## III.    STATUTORY DAMAGES AND ATTORNEYS' FEES

In order to recover statutory damages and attorney's fees under the Copyright Act, a plaintiff "must plead facts showing that the alleged infringement commenced after his registration" of the allegedly infringed work. *Gardner v. CafePress Inc.*, No. 3:14-cv-0792-GPC, 2014 WL 7183704, at *3 (S.D. Cal. Dec. 16, 2014); 17 U.S.C § 412(2).

When there are multiple alleged infringements, "*the first act of infringement* in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412." *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528

24-CV-02195-GPC-MSB

F.3d 696, 701 (9th Cir. 2008) (emphasis in original). In other words, "each separate act of infringement of the same kind, although a separate infringement within the meaning of the statute, does not mark the "commencement" of a new infringement within the meaning of section 412, rather, the infringement is part of an ongoing, continuing infringement." *Marshall*, 2019 WL 1557429, at *4. Thus, the commencement date used for recovery of statutory damages is the timing of the first infringement, even if other infringing actions followed.

However, if a portion of alleged infringements occur after the copyright's registration, that infringement can be entitled to statutory damages if there are legally significant differences between the post-registration infringement and the first act of infringement. *Derek Andrew*, 528 F.3d at 701. A legally significant difference is one that establishes a separate infringing activity commenced with that action. *See id.* (finding a hang-tag was part of an ongoing series of infringements even though it was attached to different garments because the new garments were not a legally significant difference); *Marshall v. Babbs*, No. 2:18-cv-03822-DDP, 2019 WL 1557429, at *3 (C.D. Cal. Apr. 10, 2019) (finding no legally significant difference between publishing the same infringing song on different mediums).

Here, Lesley Aldrich allegedly registered the copyrights to the Works on February 5, 2024. SAC ¶ 153. Gray completed *Nightweaver* in 2022 and began publishing it in October 2023, months before Plaintiff registered its works. *Id.* ¶¶ 154-55. Defendant Hachette, however, acquired *Nightweaver* in March 2024 and released an edited version to the public in March 2025. *Id.* ¶ 156. The edited version of *Nightweaver* was copyright registered on April 29, 2025 with a creation date of 2025. *Id.* ¶ 163. Plaintiff has identified thirty-four differences in the initial version of *Nightweaver* and the version registered by Defendant Hachette, as well as differences in the cover and artwork. Opp. at 31; SAC, Ex. 9.

1   From these facts, Plaintiff alleges that Defendant Hachette is liable for statutory

2   damages and attorneys' fees because there are legally significant differences between the

3   two versions based on "*Nightweaver*'s change in publisher, [the] significant time period

4   between publications of the two versions, character name and other editorial changes, and

5   the fact that each version has its own copyright." *Id*. ¶ 164.

6   However, a change in publisher, changes in a character's name, and a new

7   copyright do not constitute an infringing activity that is significantly different from the

8   first alleged infringement. They, rather, clothe the first infringement alleged by Plaintiff

9   in slightly different garments. *See Marshall v. Babbs*, No. 2:18-cv-03822-DDP, 2019 WL

10  1557429, at *3 (C.D. Cal. Apr. 10, 2019). The first alleged infringement, nonetheless,

11  remains despite a slightly different appearance. These minor alterations do not, on their

12  own, establish a separate infringing activity commenced.

13  The passage of time also does not separate the alleged post-registration infringing

14  activities from the first. The SAC identifies that the alleged actions of Defendant Gray as

15  the original source of the direct infringement. Though 17 months have passed between

16  the first and second publications of *Nightweaver* with Defendant Hachette acquiring the

17  story's rights, the post-registration infringement by Defendant Hachette just continues

18  that original pre-registration infringement rather than constituting an independent act.

19  The passage of time does not, by itself, create a legally significant difference indicating a

20  new infringement has commenced. *See McGucken v. Chive Media Grp., LLC*, No. CV

21  18-01612-RSWL-KS, 2018 WL 5880751, at *5 (C.D. Cal. Nov. 8, 2018).

22  Similarly, the thirty-four identified differences between versions do not

23  demonstrate a separate infringing activity commenced. Instead, those highlighted

24  differences only reflect added prose to enhance the story's quality and coherence. While

25  the variations between the Hatchette and Gatekeeper editions are made clearer with

21

24-CV-02195-GPC-MSB

Exhibit 9 of the SAC, it does not identify legally significant differences between the series of ongoing, alleged infringements.

As relevant here, Plaintiff requests leave to amend any dismissed claims; however, the Court concludes that amendment would be futile for this claim. The necessary facts to determine whether Plaintiff may be entitled to statutory damages and attorney's fees have been sufficiently pled. The court DENIES leave to amend this claim.

For these reasons, the Court GRANTS Defendants' motion to dismiss the claims for statutory damages and attorneys' fees under the Copyright Act without leave to amend.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES IN PART and GRANTS IN PART the Defendants' motion to dismiss without leave to amend. The Court VACATES the hearing set for November 21, 2025.

**IT IS SO ORDERED.**

Dated:  November 18, 2025

Hon. Gonzalo P. Curiel
United States District Judge

24-CV-02195-GPC-MSB